UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNY B.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C19-5731 RAJ

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of her applications for Supplemental Security Income. Plaintiff contends the ALJ erred by failing to account for all of her severe impairments, rejecting her testimony and three medical sources' opinions, and relying on insufficient vocational expert testimony. Dkt. 12. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

Plaintiff is 41 years old, has a high school education, and has worked as a customer service representative, stock clerk, medical assistant, and waitress. Dkt. 8, Admin. Record (AR) 26-27. Plaintiff applied for benefits on November 28, 2016, alleging disability as of September 30, 2016. AR 96-97. Plaintiff's applications were denied initially and on reconsideration. AR

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

95, 109. After the ALJ conducted a hearing in July 2018, the ALJ issued a decision finding Plaintiff not disabled. AR 34-94, 15-28.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the November 2016 application date.

**Step two:** Plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, and migraine headaches.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work with no exposure to vibration or hazards, occasionally balancing or climbing ramps or stairs and never climbing ropes, ladders, or scaffolds. She can perform simple, routine tasks but no team tasks, and can have occasional contact with coworkers and no contact with the public.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 17-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-3.

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).

**A.     The ALJ Erred in Discounting Plaintiff's Testimony**

In a January 2017 Function Report, Plaintiff stated her memory was "bad/problematic,"

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

specifically that her "short term memory is gone." AR 255, 259. She is "easily distracted." AR 260. At the July 2018 hearing, Plaintiff testified she has difficulty concentrating. AR 69. Anxiety and depression cause word-finding problems, tiredness, and crying. AR 61. Plaintiff testified she sleeps excessively and unpredictably. AR 56. About twice a month she has migraines lasting two to three days, requiring her to stay in a dark room. AR 57-58. At those times, her parents, sister, or great aunt will care for her children. AR 58. Plaintiff has a hand tremor. AR 59. She can stand or walk about 15 to 20 minutes before needing to rest for five minutes. AR 69, 75.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo*, 871 F.3d at 678. The ALJ discounted Plaintiff's testimony based on inconsistency with the record, inconsistency with her activities, improvement with treatment, and lack of supporting clinical findings. AR 22-24.

### 1. Inconsistency with the Record

The ALJ erred by discounting Plaintiff's testimony on the grounds that her testimony of losing jobs due to impairment-related mistakes was inconsistent with her statement to a therapist that her husband had gotten her fired. AR 22. The ALJ mischaracterized the record. In 2016 Plaintiff told a therapist that her marriage "after high school … ended really quickly" because her husband "was psychologically abusive. He got [her] fired from [her] jobs so he could keep [her] at home." AR 392. At the 2018 hearing Plaintiff testified that she lost jobs in 2013 and later, when she was at least 34 years old, due to issues such as "mixing up words and numbers"

and other mistakes. AR 50-52. Plaintiff's statement to her therapist referred to a brief period after high school. Plaintiff's hearing testimony referred to when Plaintiff was age 34 or older. The ALJ's interpretation that these two statements referred to the same period of time was not rational. *Cf. Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (when evidence is susceptible to more than one interpretation, ALJ's interpretation must be upheld if rational). Thus, the statements were not inconsistent and provided no reason for discounting Plaintiff's testimony. The Commissioner argues, despite the lack of any inconsistency, Plaintiff's "poor earnings history and questions regarding her reasons for not working" provided a basis to discount her testimony. Dkt. 13 at 4. The only question regarding Plaintiff's reason for not working arises from the ALJ's mischaracterization of the record, which cannot provide a basis for rejecting evidence. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's decision was not supported by substantial evidence where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record"). And poor earnings history is an illegitimate *post hoc* reason, as the ALJ made no finding of poor earnings history and did not rely on any such reason. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995) (court reviews ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

The ALJ discounted Plaintiff's testimony in part because her treating doctor, Rebecca Jo Renn, M.D., noted possible amplification of symptoms. AR 22. In her assessment, Dr. Renn wrote: "Definite depression, though I suspect that she may be amplifying the severity and that much of her distress is due to poor coping and difficult interpersonal situations. So we need to be realistic about how much to expect meds to help." AR 1030. Dr. Renn did not discount Plaintiff's distress, but questioned the cause. The mere fact that an ALJ mentions evidence that

could suggest malingering, but does not affirmatively find that the evidence shows the claimant was malingering, cannot support rejection of the claimant's testimony. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). The ALJ did not make a finding that Plaintiff was malingering; she stated only that Dr. Renn noted Plaintiff "appeared to be possibly amplifying the severity of her symptoms." AR 22. This vague statement did not relieve the ALJ of her obligation to provide clear and convincing reasons for rejecting Plaintiff's testimony.

The ALJ found Plaintiff's ability "to remember and provide detailed information during her hearing, which lasted well over an hour," inconsistent with her "asserted memory issues and inability to pay attention." AR 22. An ALJ's observations can be relevant when assessing a claimant's allegations. *See Han v. Bowen*, 882 F.2d 1453, 1458, n.8 (9th Cir. 1989) (no error where ALJ made specific findings based on his observation of the claimant). But here, Plaintiff's behavior at her hearing did not contradict her allegations. *Cf. Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility."). Plaintiff testified to short-term memory problems and easy distractibility. She wrote in her 2017 Function Report that "if someone is explaining something new to me, I lose attention after the 1st sentence." AR 260. The hearing did not involve short-term memory or new information; rather, it required Plaintiff to remember her longstanding health issues and employment history. And the record reveals nothing distracting during the hearing. The ALJ's observations did not contradict Plaintiff's allegations, and thus were not a clear and convincing reason to discount her testimony.

Inconsistency with the record was not a clear and convincing reason to discount Plaintiff's testimony.

### 2. Activities

The ALJ cited Plaintiff's ability to "drive a car, live alone with her two school-aged children, [and] use her smart phone to text, access the internet, call people, view movies, and use its calendar and map applications," as well as her ability to draw, sew, and attend counseling sessions. AR 23.[3] Caring for her children included getting them ready and taking them to and from school, helping them with homework, preparing meals, shopping for groceries, doing laundry, and sweeping. *Id*. An ALJ may discount a claimant's testimony based on daily activities that either contradict her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ did not explain how these activities contradict any of Plaintiff's testimony, and no contradiction is apparent. The Commissioner also fails to elucidate the matter, other than an unexplained and unsupported assertion that the activities "provided a basis to question the reliability of Plaintiff's reported symptoms." Dkt. 13 at 7. The ability to carry out some basic activities does not undermine claims of disabling impairments. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits…." *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996). Plaintiff's activities were not a clear and convincing reason to discount her testimony.

### 3. Improvement with Treatment

The ALJ cited treatment notes showing Plaintiff "making progress," feeling "happier," or

---

[3] The ALJ also cited Plaintiff testifying before the legislature, which lasted a minute and a half at most. AR 23, 71. The Commissioner does not mention this activity, apparently conceding that it does not contradict Plaintiff's testimony or show she can work. *See* Dkt. 13 at 6-7.

"doing good" with mental health therapy. AR 23 (citing AR 1039, 1008, 815-17). Evidence that treatment returned a claimant "'close to the level of function they had before they developed symptoms or signs of their mental disorders' … can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00H (2014)). However, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)). These vague statements of mild improvement with therapy do not show Plaintiff can work or otherwise undermine her testimony.

The ALJ also cited February 2016 treatment notes showing that, after a November 2015 botulinum toxin injection, Plaintiff's migraines decreased from an average of five days per week to three migraines in three months, each lasting 9 to 48 hours. AR 322; AR 24. July 2015 and February 2016 injections produced similar results. AR 325, 338. After May 2016, February 2017, and May 2017 injections, "migraine days decreased" by an unspecified amount. AR 353, 833, 842. Plaintiff points to August 2017 treatment notes documenting daily migraines. AR 847. A September 2017 injection decreased migraine days to "average 2 days per month for the first 1.5 month." AR 861. However, November 2017 and January 2018 injections "did not help reduce migraine days much," and Plaintiff had about 25 migraine days in three months. AR 870, 879. The ALJ's finding that Plaintiff's migraines were well controlled finds some support before late 2017. However, after November 2017, this finding is contradicted by the record. Plaintiff's testimony at the July 2018 hearing that she gets migraines about twice a month for two to three days at a time was not inconsistent with the contemporaneous medical record. AR 57. The earlier improvement does not contradict Plaintiff's testimony, because Plaintiff did not testify

about the earlier period.

Improvement with treatment was not a clear and convincing reason to discount Plaintiff's testimony.

### 4. Lack of Supporting Medical Evidence

The ALJ cited clinical findings of good short-term (as well as long-term) memory, which contradict Plaintiff's claims of poor short-term memory. AR 23 (citing AR 397); *see also* AR 420, 424, 430, 434, 440, 445, 450 (all state "Short and long-term memory intact."). *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony.").

Regarding other symptoms, however, the ALJ cited various normal clinical findings, such as average intellectual functioning and normal orientation and insight, that do not contradict Plaintiff's testimony. AR 23-24. And a mere lack of corroborating medical evidence is not sufficient to discount a claimant's testimony. *Burch*, 400 F.3d at 681 ("lack of medical evidence cannot form the sole basis for discounting [symptom] testimony").

The ALJ also found Plaintiff's providers "ruled out obstructive sleep apnea [and] have been unable to find an etiology" for her sleep issues, but failed to explain the relevance of this finding. AR 24 (citing AR 1014). A sleep study determined Plaintiff's "sleep architecture was abnormal" and did not contradict or undermine Plaintiff's testimony. AR 1014.

The ALJ also noted a provider's assessment that Plaintiff's chronic pain "may be psychological in nature." AR 567. Nevertheless, Social Security benefits are available for impairments that prevent work, whether "physical or mental." 20 C.F.R. § 416.905(a). This does not contradict or undermine Plaintiff's testimony.

Contradiction by medical evidence was a clear and convincing reason to discount

Plaintiff's claim of memory problems. Regarding her other symptoms, lack of supporting medical evidence was not an adequate reason to discount Plaintiff's testimony and the ALJ erred by discounting her testimony without a clear and convincing reason.

**B.    Medical Opinions**

An examining physician's opinion is generally entitled to greater weight than a nonexamining physician's opinion. *Garrison*, 759 F.3d at 1012. An ALJ may only reject the contradicted opinion of an examining doctor by giving "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the opinion. *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014).

**1.    The ALJ Erred in Discounting the Opinions of Terilee Wingate, Ph.D.**

Dr. Wingate examined Plaintiff in September 2017 and opined that her major depressive disorder, generalized anxiety disorder, and Cluster B personality traits caused marked limitations in maintaining punctual attendance, maintaining appropriate behavior, and completing a normal workday and workweek. AR 600-01. Remaining limitations were mild or moderate. *Id.* The ALJ gave great weight to the mild to moderate limitations, but rejected the marked limitations as based on Plaintiff's discredited self-reports. AR 26.

An ALJ may discount a medical opinion where it is "based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible…." *Ghanim*, 763 F.3d at 1162 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). Here, the ALJ erred in finding Plaintiff not credible. In addition, Dr. Wingate provided clinical evidence, documenting abnormalities in mood, affect, concentration, and abstract thought. AR 602. Because the ALJ erred in discounting Plaintiff's self-reports and did

not address Dr. Wingate's clinical findings, reliance on Plaintiff's self-reports was not a specific and legitimate reason to discount Dr. Wingate's opinions. On remand, the ALJ should reconsider Dr. Wingate's opined marked limitations.[4]

Plaintiff contends Dr. Wingate's opined moderate limitations should lead to a finding of disability because a vocational expert testified that a person who was off-task more than 10% of the workday could not maintain competitive employment. Dkt. 12 at 7 (citing AR 91). Plaintiff does not explain how Dr. Wingate's opined moderate limitations in following detailed instructions, learning new tasks, performing routine tasks without special supervision, adapting to changes, asking for assistance, communicating, or goal-setting would establish more than 10% off-task time. *See* AR 600-601.

### 2. The ALJ Did Not Err in Discounting the Opinions of Michelle Sullivan, ARNP

In November 2016, treating therapist Ms. Sullivan opined that because Plaintiff was undergoing an "acute flare up of anxiety and depression currently" she was limited to one to ten hours per week of working, looking for work, or preparing for work. AR 368. Ms. Sullivan opined the limitation would last 12 weeks.[5] AR 369.

The ALJ gave Ms. Sullivan's opinions little weight because they were unsupported by

---

[4] The parties address reasons the ALJ gave to *accept* Dr. Wingate's mild to moderate limitations. Dkt. 12 at 6; Dkt. 13 at 8-9. These are not relevant to the ALJ's given reasons to reject Dr. Wingate's marked limitations, and thus the Court need not address them further.

[5] Because Ms. Sullivan's opined limitations were temporary, the Commissioner argues any error in rejecting them was harmless because they were not significant probative evidence that the ALJ was required to address. Dkt. 13 at 11; *see Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (An ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" (alteration in original) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Ms. Sullivan's opinions, as Plaintiff's treating provider, are significant probative evidence. While the temporary nature of Ms. Sullivan's opinions would be relevant to evaluating her opinions, the ALJ did not raise it and thus the Commissioner's argument is a *post hoc* analysis on which the Court cannot rely. *Bray*, 554 F.3d at 1225.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

records or any "functional analysis" and were inconsistent with the record, including Plaintiff's "demonstrated functioning." AR 25. While the other reasons were erroneous, conflict with Plaintiff's activities was a germane reason to discount Ms. Sullivan's opinions.

An ALJ need not accept a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). However, because Ms. Sullivan was a treating provider, the ALJ was required to consider her treatment notes in conjunction with her opinions. *See Garrison*, 759 F.3d at 1013 (error to reject "opinions expressed in check-box form [that] were based on significant experience with [the claimant] and supported by numerous records"). The ALJ did not do so. Plaintiff cites October 2016 treatment notes documenting "recent life stressors causing depression and anxiety to flare up." AR 425; *see also* AR 426 (recent job loss causing "passive suicidal thoughts," "hopelessness and trouble functioning"), 430 (increasing medication dosage).[6] The ALJ erred by failing to address whether these records were sufficient to support Ms. Sullivan's opined limitations.

The error is harmless, however, because the ALJ also discounted Ms. Sullivan's opinions as inconsistent with Plaintiff's demonstrated functioning, including getting her children ready and taking them to and from school, helping them with homework, grocery shopping, preparing meals, housework, and attending frequent therapy sessions. AR 25. The ALJ reasonably inferred these activities together required over ten hours per week and thus conflicted with the opined inability to work no more than ten hours per week. Conflict with Plaintiff's activities was

---

[6] Plaintiff also cites Ms. Sullivan's April and May 2016 treatment notes showing "low energy" and increasing medication dosage because symptoms were "not yet at goal." AR 417, 421. However, these records do not appear to relate to the "acute flare up" on which Ms. Sullivan's opinions were based. AR 368.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

a germane reason to discount Ms. Sullivan's opinions, and thus the ALJ did not err by rejecting them.

### 3. The ALJ Did Not Harmfully Err in Discounting the Opinions of Ramona Marshall, MA, MHP

In July 2018, treating provider Ms. Marshall wrote a letter opining Plaintiff's post-traumatic stress disorder and major depressive disorder left her "sometimes" unable to perform daily living activities such as "bathing, making appointments, or setting reasonable interpersonal boundaries with others." AR 1039. The ALJ gave these opinions little weight as based on Plaintiff's unreliable self-reports and inconsistent with Plaintiff's demonstrated functioning. AR 26.

Ms. Marshall also wrote that Plaintiff "credibly reports" difficulty understanding and applying information when her anxiety is aroused by physical or interpersonal problems, and "reports" being fired as a result. AR 1039. The ALJ rejected this statement because it constituted "vouching" for Plaintiff and thus invaded her province as trier of fact. AR 26. This was a germane reason to discount the statement. Ms. Marshall presented the statement not as her medical opinion, but as Plaintiff's statement. The ALJ permissibly disregarded it.

Regarding Ms. Marshall's other opinions, Plaintiff has not established the ALJ harmfully erred by rejecting them. The ALJ included extensive mental and social limitations in the RFC, including only simple, routine tasks, no public contact, and limited coworker contact. Plaintiff has not shown Ms. Marshall's opinions require any further limitations.

## C. The ALJ Must Reevaluate the Cluster B Diagnosis at Step Two

A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. Impairments are severe if they "significantly limit" a claimant's "physical or mental ability to do basic work

activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).

Plaintiff argues the ALJ erred by excluding Cluster B personality traits, PTSD, fibromyalgia, chronic fatigue syndrome, and hand tremors as severe medically determinable impairments at step two. Dkt. 12 at 7-9.

Dr. Wingate, an acceptable medical source, diagnosed Plaintiff with Cluster B personality traits. AR 600. The Commissioner contends the ALJ considered all of Plaintiff's mental limitations, regardless of which condition caused them. Dkt. 13 at 14. However, because the ALJ erroneously rejected Dr. Wingate's opinions and did not mention any consideration of the Cluster B diagnosis at step two or any other step, on remand the ALJ should determine whether Cluster B personality traits should be included at step two.

Regarding the other conditions, Plaintiff identifies no objective medical evidence from acceptable medical sources that establishes these are severe medically determinable impairments. Plaintiff's treating therapist, Ms. Marshall, stated Plaintiff "is diagnosed with Posttraumatic Stress Disorder," but Ms. Marshall is not an acceptable medical source. AR 1039. Treating physician Dr. Renn listed PTSD as well as depression in "Review of Diagnosis," but her own assessment only listed "depression." AR 1028, 1030. And Plaintiff's assertion that her symptoms are consistent with the alleged conditions fails to establish that she actually has the conditions.

**D.     The ALJ Did Not Harmfully Err at Step Five**

The ALJ gave great weight to the opinion of non-examining state agency doctor Christmas Covell, Ph.D., who opined Plaintiff could carry out "simple 1-3 step instructions." AR 25, 122. The ALJ limited Plaintiff to "simple, routine tasks." AR 21. Relying on vocational expert testimony, the ALJ found Plaintiff could perform jobs such as small products assembler

and inspector. AR 28. Plaintiff contends the ALJ erred because these jobs require a reasoning level of 2, which Plaintiff argues exceeds Dr. Covell's opined limitation. Dkt. 12 at 17.

The Court need not address Plaintiff's argument, because the ALJ also found Plaintiff could work as a bakery racker, which only requires a reasoning level of 1. Dictionary of Occupational Titles § 524.687-018, 1991 WL 674400 (G.P.O. 1991). The vocational expert testified that this occupation represented 59,000 jobs in the national economy, which is sufficient to meet the Commissioner's burden at step five. AR 88; *see Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) ("25,000 national jobs … represents a significant number of jobs in" the national economy).

E. **Scope of Remand**

Plaintiff requests remand for payment of benefits because Dr. Wingate's opinions, if credited as true, establish disability. Dkt. 12 at 18. "This is an erroneous reading of [Ninth Circuit] case law, which requires [the Court] to assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the [improperly discredited evidence] is credible as a matter of law." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Neither party has addressed this key matter, but the Court concludes outstanding issues remain. Dr. Wingate's opinions remain contradicted by state agency doctors' opinions, a conflict the ALJ must resolve. *See* AR 24-25. Whether Plaintiff's migraines were effectively treated for some of the relevant period, and to what degree, remains unresolved.

Enhancement of the record would be useful and, accordingly, remand for further proceedings is appropriate.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 14

case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Plaintiff's testimony and Dr. Wingate's opinions, reevaluate the Cluster B diagnosis at step two if needed, reassess the RFC as appropriate, and proceed to step five as necessary.

DATED this 4th day of March, 2020.

The Honorable Richard A. Jones
United States District Judge

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 15